WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamie Michelle Howard,<br><br>    Plaintiff,<br><br>v.<br><br>Ethicon Incorporated, et al.,<br><br>    Defendants. | No. CV-20-01137-PHX-MTL<br><br>**ORDER** |

Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's (collectively "Ethicon") Motion to exclude the case-specific opinions of Dr. Scott Bailey, an expert for Plaintiff Jamie Howard. (Doc. 34.) The Motion is fully briefed. For the reasons expressed herein, the Motion is denied.

**I.**

Dr. Daniel Rowland performed surgery on Plaintiff Jamie Howard. (Doc. 60 at 5.) That procedure involved inserting a pelvic mesh product called TVT-O. (*Id*. at 2.) Defendant Ethicon manufactures that product. (*Id*.) Ms. Howard alleges that the mesh began to erode and caused several complications, eventually requiring a second surgery. (*Id*. at 3.) That surgery only partially rectified the problem because some of the allegedly eroded mesh could not be safely removed. (*Id*.)

Ms. Howard filed suit. Originally, the case was assigned to the Southern District of West Virginia, which served as the multi-district litigation ("MDL") court. After presiding over several bellwether trials and ruling on certain evidentiary issues, the MDL

court transferred this case to the District of Arizona. (Doc. 41.) Shortly after that transfer, the parties filed a status report (Doc. 60), stipulated to dismiss certain counts (Doc. 64) and appeared for a status conference (Doc. 65). Only five counts from the Short Form Complaint remain in this case: I (negligence), III (strict liability – failure to warn), V (strict liability – design defect), XVII (punitive damages), and XVIII (discovery rule and tolling). The parties have informed the Court that they might request additional discovery depending on the extent of the medical treatment Ms. Howard received after her deposition. The Court is satisfied that even if it were to grant such a request, the limited additional discovery will not affect the disposition of this Motion.

During the initial Discovery period, Ms. Howard retained Dr. Scott Bailey as an expert. Using a differential diagnosis approach, he opined that the TVT-O mesh product caused her alleged injuries. Defendants filed the pending motion, claiming that Dr. Bailey's opinion does not address the relevant issue of the design defect. They also argue that the opinion did not fully consider Ms. Howard's medical history and thus fails to meet the reliability standard required for admissibility.

## II.

Rule 702 of the Federal Rules of Evidence governs the introduction of an expert opinion. The rule requires that

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The party who seeks to introduce expert testimony evidence must show by a

preponderance of the evidence that the testimony is admissible under Rule 702. *See* Fed. R. Evid. 104(a); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 & n.10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). In short, expert opinion evidence is admissible when it "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. Rule 702, as the *Daubert* Court explained, is about "scientific validity . . . of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 594–95. Trial courts act as a gatekeeper to ensure that expert testimony meets *Daubert*'s double demand. *Id*. at 597.

### III.

Ethicon argues that the Court should exclude Dr. Bailey's opinion evidence because it is both irrelevant and unreliable. The Court will evaluate each argument in turn.

### A.

Ethicon's Motion argues that the Court should exclude Dr. Bailey's opinion because it only addresses the mesh product itself as the cause of Ms. Howard's alleged injuries, rather than attributing the injuries to a design defect. (Doc. 34 at 2-3.) Though Ethicon does not explicitly state which of *Daubert*'s prongs it bases its challenge on, the Court construes this as a relevance argument. Ms. Howard argues that the Court should not look at Dr. Bailey's opinion in isolation. Another expert, Dr. Bruce Rosenzweig, has opined on the design defect. (Doc. 38 at 5.) Ms. Howard argues that her disclosing Dr. Rosenzweig as an expert and Dr. Bailey's assessment work in concert to address whether a design defect in the mesh caused her injuries. (*Id*. at 5-6.)

Further, Ms. Howard says that Dr. Bailey's opinion meets the Rule 702 standard because "it will help the trier of fact understand the evidence [and] is based on sufficient facts and reliable methods, which have been applied to the case at issue." (Doc. 38 at 5 (citing *Huskey v. Ethicon, Inc*., 29 F. Supp. 3d 691, 701 (S.D.W. Va. 2014)). The Court agrees with Ms. Howard that Dr. Bailey's report will help the jury understand the

evidence or decide a fact at issue and is thus relevant.

**B.**

Ethicon also argues that Dr. Bailey's medical report was unreliable. Dr. Bailey used a two-step medical process called a differential diagnosis to reach the conclusions in his report. The goal of a differential diagnosis is to determine the cause of a medical issue. First, the doctor must compile a list "ruling in" all sources generally capable of causing the injury. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1057 (9th Cir. 2003), as amended on denial of reh'g (Sept. 25, 2003). Second, he "rules out" possible sources of the injury, explaining his reasoning. *Id.* The process is unreliable if he does not consider a source generally capable of causing the injury. *Id.* at 1058. It is also unreliable if a doctor rules in a source that is generally unlikely to cause the injury. *Id.* When a doctor follows the proper process, it is reliable and thus admissible under *Daubert*. *Id.* at 1057.

Ethicon argues that Dr. Bailey didn't follow the proper process in creating his report. Specifically, Ethicon says that the report is unreliable because it contradicts evidence that Ms. Howard had sexual pain years before her mesh implant surgery. (Doc. 34 at 3-4.) According to the Motion, Ms. Howard reported in a medical questionnaire that she experienced pain during intercourse, also known as dyspareunia, years before her mesh implant. (*Id.* at 3.) She also reported chronic pelvic pain long before the surgery. (*Id.* at 4.) Ethicon further notes that Dr. Bailey allegedly "admitted that in forming his opinions he relied upon [Ms. Howard's] deposition testimony, which contradicted her medical records . . . ." (*Id.* at 3.) Ethicon therefore concludes that Dr. Bailey's causation opinion was unreliable because it was based on an "erroneous belief" that Ms. Howard did not have "severe dyspareunia prior to the [] implantation." (*Id.* at 5.)

Ms. Howard argues that Dr. Bailey performed a proper differential diagnosis. She says that "Dr. Bailey considered [her] prior dyspareunia and properly ruled it out as resolved by her hysterectomy." (Doc. 38 at 4.) After reviewing Dr. Bailey's report, the Court agrees with Ms. Howard.

Though Dr. Bailey found that Ms. Howard did not have medical or historical factors that would increase her risk for sexual pain or scarring, that does not mean he ignored her earlier reports of pain during intercourse.  He noted that "[s]he did have a history of bacterial vaginosis and prior to her hysterectomy she experienced dyspareunia, which . . . was relieved by the partial hysterectomy, but no discomfort, pain, or scratching sensations with intercourse at the time of the implant." (Doc. 34-2 at 3.)  In other words, Dr. Bailey acknowledged Ms. Howard's prior complaints of pain during intercourse from decades ago and concluded that given her partial hysterectomy, the dyspareunia that she currently experiences is unrelated to her past complaints.  After eliminating other possibilities, Dr. Bailey concluded that "Ms. Howard's pelvic injuries were caused by the defective [mesh] device." (Doc. 34-2 at 4.)  The Court finds that Ms. Howard has shown beyond a preponderance of the evidence that Dr. Bailey properly performed his differential diagnosis and his opinion satisfies *Daubert*'s reliability requirement.

**IV.**

Accordingly,

**IT IS ORDERED denying** the Motion to Exclude.  (Doc. 34.)

Dated this 14th day of July, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge